William METLIN, Plaintiff-Appellee,

v.

General Joseph T. PALASTRA, Jr., Commanding General, Fort Polk, Louisiana and Colonel Charles D. Herrera, Defendants,

Colonel Charles D. Herrera, Defendant-Appellant.

David W. CARSON, Plaintiff-Appellee,

v.

General Joseph T. PALASTRA, Jr., Commanding General, Fort Polk, Louisiana and Colonel Charles D. Herrera, Defendants,

Colonel Charles D. Herrera, Defendant-Appellant.

No. 83–4266.

United States Court of Appeals, Fifth Circuit.

April 9, 1984.

Arnold I. Melnick, Marshall M. Kaplan, Litigation Div., U.S. Dept. of the Army, John F. Cordes, Barbara L. Herwig, Dept. of Justice Appellate Staff, Civ. Div., Washington, D.C., for defendant-appellant.

Broussard, Bolton & Halcomb, Daniel E. Broussard, Jr., Steven C. Graalmann, Alexandria, La., for plaintiffs-appellees.

Before WISDOM, REAVLEY and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

An Army officer appeals from the denial of summary judgment in a suit by the owners of two businesses declared off-limits to Army personnel by an Armed Forces Disciplinary Control Board of which the officer was president. After finding appellate jurisdiction over the denial of the officer's claim of absolute immunity, we exercise pendent jurisdiction over his qualified immunity claim and conclude that the Army officer is entitled to qualified immunity as a matter of law.

I

According to the summary judgment evidence, on January 13, 1981, some Leesville teenagers burglarized the home of Lieutenant Colonel Brown, Assistant Provost Marshall at Fort Polk. Some of the stolen property turned up at Metlin's pawnshop. Metlin was arrested for receiving stolen property and other charges, but the charges were later dropped. Brown's superior at Fort Polk was the defendant, Colonel Charles Herrera. Herrera was Provost Marshall and the president of the Local Board of the Armed Forces Disciplinary Control Board. Among other duties, the Local Board is empowered by Army regulations to recommend establishments and areas to be placed on or removed from off-limits restrictions; off-limits decisions, however, are made by the local commander as a "function of command".

After learning of Metlin's arrest, Herrera talked to the commanding officer, General Palastra, who indicated that "emergency" action would be appropriate but did not take any immediate action to place the pawnship off-limits. About two weeks later, on February 12, the Board met and voted to put the pawnshop off-limits. Palastra approved this recommendation. On March 4, Metlin received notice of this action. It was the first notice he had received that the Army was considering such action, although the regulations arguably provide that notice should be given *before* action is taken in "routine" cases. In response to letters from Metlin's attorney, Herrera indicated that he would investigate the situation and invited Metlin to appear at the next Local Board meeting. Accord-

ing to the plaintiffs, Herrera later indicated that an appearance was unnecessary, and Metlin did not appear. Although Herrera was informed that all charges against Metlin had been dropped, the Local Board voted to continue the off-limits designation at its May 14 meeting, and Palastra approved the recommendation.

At the May 14 meeting the Local Board, in response to a Defense Department directive discouraging military contact with drug paraphernalia, also voted to place Carson's record store off-limits because he was selling paraphernalia. Carson received no notice until June 11, although another record store, owned by a brother of one of Herrera's employees, did receive advance notice that the Local Board was considering such action.

Metlin and Carson filed separate lawsuits on July 16 against Palastra, Herrera, the United States, the Secretary of the Army, and the Local Board, seeking injunctive relief and damages for violations of their due process rights and armed forces regulations. On August 6, they were represented by an attorney at the Local Board meeting; the Board voted to recommend removal of the restrictions from the pawnshop, but not the record store. The new commanding officer, General Peter, approved this recommendation. Some months later the restrictions were lifted from the record store as well, after the sale of paraphernalia was discontinued.

The district court consolidated the cases, denied the request for injunctive relief as moot, and dismissed the actions against the United States, the Local Board, and the Secretary of the Army; the court later stayed proceedings against General Palastra under the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.App. §§ 521 and 524, because Palastra had been stationed out of the country. The court denied motions to dismiss the actions against Palastra and Herrera. After substantial discovery, Herrera filed a new motion to dismiss or for summary judgment on the ground of absolute or qualified immunity. The court

denied the motion without opinion on March 14, 1983, and Herrera appealed.

## II

We have recently decided to treat denials of claimed absolute immunity as appealable orders. *See Williams v. Collins,* 728 F.2d 721 (1984). Our jurisdiction can, in the interest of judicial economy, extend as a matter of discretion to review of the closely related denial of qualified immunity. This is true even though we have not held a denial of qualified immunity to be an appealable order. *See Dellums v. Powell,* 660 F.2d 802 (D.C.Cir.1981); *IBM v. Levin,* 579 F.2d 271, 278 (3rd Cir.1978); *United States v. MacDonald,* 531 F.2d 196, 199 n. 3 (4th Cir.1976); *Deckert v. Independence Corp.,* 311 U.S. 282, 61 S.Ct. 229, ·85 L.Ed. 189 (1940). But this is a power we exercise with caution. *See Garner v. Wolfinbarger,* 433 F.2d 117, 120 (5th Cir.1970). Here, however, because the scope of review was uncertain the parties fully briefed and argued all issues. Moreover, the issue of qualified immunity decides the entire appeal and requires only a routine application of settled principles.

## III

Colonel Herrera argues that he is entitled to absolute immunity or, in the alternative, qualified immunity from constitutional and common law damages. Finally, he denies that plaintiffs have been deprived of any constitutional right. We are uncertain whether plaintiffs seek to recover for any common law tort. Our uncertainty need not detain us because Colonel Herrera indisputably is immune from common law tort liability. He was at all times acting at least within the "outer perimeter" of his line of duty. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

*Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) permits liability for damages stemming from an asserted constitutional deprivation only when the "law was clearly established at the time an action occurred." *Id.,* 102 S.Ct.

at 2739. As we have made plain, "[t]he focus is on the objective legal reasonableness of an official's acts. Unless the ... plaintiff can establish that the defendant officials have violated clearly established law, the claim for damages must be dismissed." *Sampson v. King*, 693 F.2d 566, 570 (5th Cir.1982).

It is by no means certain that plaintiffs' expectation of patronage from servicemen stationed nearby is a protectable property interest.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Plaintiffs suggest that the provisions of the applicable Army regulations providing the procedures for an off-limits declaration create the requisite property interest. By the terms of the regulations, however, the final off-limits decision belongs to the commander. It is at least uncertain whether the regulations place "substantive limitations on official discretion." *Olim v. Wakinekona*, —— U.S. ——, ——, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). As recently noted by the Supreme Court, "[t]he [government] may choose to require procedures for reasons other than protection against deprivation of substantive rights, ... [and] in making that choice the [government] does not create an independent substantive right." *Id.*

Nor can we say with any certainty that plaintiffs have identified a protected liberty interest. "[R]eputation alone, apart from some more tangible interests such as employment, is [not] 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).

Moreover, even if we were to identify with certainty some property or liberty interest, whether the process then due was not accorded is far from certain. Plaintiffs received notice and an opportunity to appear at a hearing after the initial decision to place their businesses off-limits. It is at least unclear whether such post-deprivation procedures were here adequate. *See Parratt v. Taylor*, 451 U.S. 527, 538–39, 101 S.Ct. 1908, 1914–15, 68 L.Ed.2d 420 (1981).

Colonel Herrera was entitled to qualified immunity as a matter of law. The district court erred in denying his motion for summary judgment. The case is remanded with instructions to enter judgment in favor of Colonel Herrera on plaintiffs' claims against him.

REVERSED AND REMANDED.