**GROUP HEALTH INCORPORATED,**
Plaintiff-Appellee,

v.

**BLUE CROSS ASSOCIATION and Blue Shield of Greater New York,**
Defendants-Appellants,

**United States Department of Health and Human Services,**
Intervenor-Defendant-Appellant.

Nos. 703, 704, Dockets 85–6314, 85–6324.

United States Court of Appeals,
Second Circuit.

Argued Feb. 3, 1986.

Decided June 20, 1986.

Susan E. Harkins, Asst. U.S. Atty., for S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., Jane E. Booth, Asst. U.S. Atty., New York City, of counsel), for intervenor-defendant-appellant.

Robert A. Bicks, New York City (Alan C. Drewsen, David H. Kagan, Breed, Abbott & Morgan, New York City, of counsel), for defendants-appellants.

John M. O'Connor, New York City (Mark Weldon, DeForest & Duer, New York City, of counsel), for plaintiff-appellee.

Before FEINBERG, Chief Judge, and VanGRAAFEILAND and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal concerns the relationship between a provider of insurance for medical and health services under Medicare and the fiscal intermediaries through which this provider elected to receive reimbursement from the federal government. One issue is whether or not the fiscal intermediaries were government agents acting within the scope of their authority. The government urges us to find that these intermediaries acted as government agents and are therefore entitled to absolute official immunity. Lurking in the background of this appeal are collateral questions regarding the viability of a Federal Torts Claims Act (FTCA) action begun by the provider in which it seeks to hold the government liable for the actions of the fiscal intermediaries, as government agents. Yet, in the FTCA suit, the government claims, interestingly enough, that the intermediaries are *not* its agents. Burrowing to the root of this tangle, it becomes clear that these contradictory claims are interrelated. Moreover, in their present posture the cases are too inchoate and tentative for us to undertake appellate jurisdiction.

Blue Cross Association (Association), Blue Cross/Blue Shield of Greater New

York (Blue Cross), and the United States Department of Health and Human Services (HHS) appeal from an August 12, 1985 decision and order of the United States District Court for the Southern District of New York (Leisure, J.) denying their motion for summary judgment, 69 F.Supp. 625. The Association, Blue Cross and HHS (collectively, the defendants) argue that they are entitled to an immediate appeal from the denial of their claim of absolute immunity pursuant to the collateral order doctrine, *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and that this Court has pendent appellate jurisdiction to review the other arguments advanced on appeal. For reasons to be discussed shortly, we do not believe the decision appealed from falls within that small class of cases encompassed by the collateral order doctrine and therefore dismiss this appeal.

## I. FACTUAL BACKGROUND

### A. *Proceedings*

Group Health Incorporated (GHI) seeks damages from the Association and Blue Cross on causes of action sounding in negligence, misrepresentation and breach of the warranty of authority. GHI alleges it suffered a monetary loss as a result of Blue Cross' disallowance of Medicare reimbursement for interest incurred by Hillcrest General Hospital (Hillcrest), a private hospital which GHI owned from 1974–1980.

GHI commenced the instant action in New York State Supreme Court, New York County. After the Association and Blue Cross removed the action to the Southern District pursuant to 28 U.S.C. § 1442(a)(1) (1982), GHI moved to remand the case to state court. HHS then filed a motion to intervene as a defendant in the action. On June 13, 1984 the district court (Sweet, J.) denied GHI's motion to remand finding that Blue Cross' actions in denying the reimbursement for interest *were* taken under color of governmental authority. *Group Health Inc. v. Blue Cross Ass'n*, 587 F.Supp. 887, 889–91 (S.D.N.Y.1984). Since Blue Cross acted as a fiscal interme-

diary on HHS' behalf, GHI's claim could be removed to federal court. It also granted HHS' motion for permissive intervention under Fed.R.Civ.P. 24(b)(2) and consolidated plaintiff GHI's separate proceeding against the United States. *Id.* at 891–93. In that action GHI alleges that the United States is liable under the FTCA for the negligent and wrongful acts of Blue Cross, the Association and HHS.

Following limited discovery, defendants moved on November 5, 1984 for summary judgment. Judge Leisure denied the motion and defendants appealed. GHI has moved to dismiss this appeal for lack of appellate jurisdiction.

### B. *The Parties*

GHI is a not-for-profit health service corporation organized and operating pursuant to Article 43 of the New York Insurance Law, N.Y.Ins.L. §§ 4301 *et seq.* (McKinney 1985). Blue Cross also is a not-for-profit corporation organized under the New York Insurance Law providing health insurance coverage to subscribers in the greater New York area. The Association is incorporated under the Illinois General Not-For-Profit Corporation Act and has a membership that includes Blue Cross as well as 67 other Blue Cross Plans operating throughout the country.

The Medicare program is a federally funded health insurance program for the aged and the disabled. 42 U.S.C. §§ 1395 *et seq.* (1982). It consists of two parts—A and B. Part A provides insurance coverage for hospital, related post-hospital, home health and hospice care. 42 U.S.C. § 1395c. The cost of providing Part A services is principally assumed by the Federal Hospital Insurance Trust Fund, which is funded by Social Security taxes. 42 U.S.C. § 1395i. Part A benefits may only be paid to providers of Medicare services. 42 U.S.C. § 1395f(a). Providers participating in Part A are prohibited from charging eligible patients for services covered by Medicare. 42 U.S.C. § 1395cc(a)(1)(A). Part B is an optional supplementary insurance program that covers payment of medi-

cal and health services not covered under Part A, for example, physicians' services. It is financed by payments from enrollees as well as funds provided by the federal government. 42 U.S.C. § 1395j.

GHI functioned as a carrier under Part B of the Medicare program and Hillcrest was a provider of Medicare services. Under 42 U.S.C. § 1395h(a) providers of inpatient services must choose to be reimbursed either by HHS or by a fiscal intermediary, a private organization under contract with HHS to serve as a conduit for reimbursement. The fiscal intermediary determines the amount of reimbursement due the provider and makes the reimbursement. It also resolves disputes concerning reimbursement decisions, 42 C.F.R. §§ 421.-100(e) & (f) (1985), and "serve[s] as a center for, and communicate[s] to providers, any information or instructions furnished to it by the Secretary, and serve[s] as a channel of communication from providers to the Secretary...." 42 U.S.C. § 1395h(a). HHS may review the fiscal intermediaries' initial reimbursement determinations. *See* 42 C.F.R. § 405.1885(b) (1985).

In this case the Association and Blue Cross served as fiscal intermediaries under Part A. With HHS' approval, the Association entered into a subcontract with Blue Cross, under the terms of which the Association delegated some of its assignments to Blue Cross. Pursuant to this subcontract and to Hillcrest's election, Blue Cross acted as Hillcrest's fiscal intermediary. The subject matter of this appeal involves reimbursement of Hillcrest under Part A during the six years it was owned by GHI.

## C. *The Events*

In January 1973 GHI began exploring the possibility of acquiring a private hospital. GHI proposed to use its subscriber funds to acquire Hillcrest, and to accomplish this it was necessary to obtain the New York State Insurance Department's (Insurance Department) approval. In a letter dated June 22, 1973 GHI formally requested approval of the Insurance Department. On September 5, 1973 representa-

tives of GHI and Blue Cross met to discuss the plans then underway to purchase Hillcrest. The following January GHI submitted to the Insurance Department an amended application to purchase Hillcrest which was approved on February 15, 1974.

Before GHI purchased Hillcrest, it requested Blue Cross' advice as to whether an interest return on the mortgage funds used to make the purchase would be included in the calculation of Hillcrest's Medicare and Blue Cross reimbursement rates. In a telephone conference on February 4, 1974, Mr. Ingram of Blue Cross informed Dr. Yaegar of GHI that "the Blue Cross Board of Directors did approve the interest return on investment." Blue Cross did not consult the Secretary or the Association at any time prior to ruling that this interest would be reimbursable for Medicaid purposes. On February 28, 1974 GHI purchased Hillcrest.

In a letter dated March 26, 1974 from William F. McMann, Assistant Commissioner of the New York State Health Department, the Department rejected the proposed change in Blue Cross reimbursement because under Health Department Regulations, only proprietary organizations, and not Article 43 not-for-profit corporations, were entitled to a return on equity. The Department did conclude that, were GHI to make a loan from restricted funds to Hillcrest, interest paid on such loans would be a reimbursable cost. GHI informed Blue Cross by letter dated May 21, 1974 that it would give a $6 million mortgage to Hillcrest payable over 30 years at a nine percent rate to be repaid through constant monthly payments, with a standard annual repayment of $579,600. Blue Cross confirmed in a letter dated June 11, 1974, that these terms were acceptable for Medicare and Blue Cross reimbursement and that the interest on the loan, if paid according to schedule, would be included in calculating Blue Cross and Medicare reimbursement.

Hillcrest included the interest expense—representing a 9 percent return on the funds used to purchase the hospital—in its annual Medicare cost reports for fiscal years 1974 through 1980. In 1977 during

its audit of Hillcrest's 1975 costs report, Blue Cross learned that Hillcrest had not paid any interest to GHI in 1974 or 1975. Blue Cross referred the matter to HHS which, through its Regional Medicare Director, notified Blue Cross on September 29, 1978 that the interest was not reimbursable under Medicare. HHS ruled that GHI's purchase of Hillcrest was an investment—not a loan. Even were the transaction to be construed as a loan, HHS stated that the interest was not reimbursable because GHI and Hillcrest were related entities. Further, Hillcrest's failure to pay interest was additional evidence that GHI and Hillcrest were not dealing at arm's length. HHS concluded that it was "unable to understand how Blue Cross could have ruled that the 'loan' transaction [was] a reimbursable cost.... [A]uthoritative Medicare decisions can only come from written policy established by the Medicare Bureau or from consultation with this office." Blue Cross subsequently disallowed reimbursement for the interest payments.

Hillcrest requested a hearing before the Provider Reimbursement Review Board (PRRB) to appeal the interest disallowance for the 1974 through 1976 fiscal years. On September 19, 1980 the PRRB upheld the disallowance because GHI's purchase of Hillcrest did not constitute a loan from donor restricted funds, and the transaction between GHI and Hillcrest was not at arm's length. This decision became final on November 18, 1980 when the Secretary declined to affirm, reverse or modify. GHI brought an action against the Secretary in the Southern District of New York (Carter, J.), and that court granted the Secretary's motion for summary judgment. The court found the administrative decision supported by substantial evidence and held that the Secretary was not estopped from reversing Blue Cross' initial determination. We affirmed the district court's judgment in an unpublished order and the Supreme Court denied GHI's petition for certiorari.

## II. PROCEEDINGS

### A. *The Complaint*

GHI asserts eight causes of action against Blue Cross and the Association;

the first five pertain to reimbursement under the Medicare program and the last three to reimbursement under the Blue Cross reimbursement system. GHI alleges that Blue Cross was negligent and grossly negligent in (1) failing to consult the Secretary before representing that the interest was reimbursable; (2) falsely representing that Medicare would reimburse the interest; and (3) misrepresenting that it was authorized to act as the Secretary's agent in determining whether the interest was reimbursable under Medicare. Against the Association, GHI alleges that (4) it is responsible for Blue Cross' wrongs; and (5) it was negligent and grossly negligent in failing properly to supervise Blue Cross. The sixth through eighth claims allege that Blue Cross breached its agreement with GHI by refusing to include the rate of return in the reimbursement calculation and that Blue Cross is estopped from changing its position in that regard.

### B. *District Court Decision*

Following limited discovery, Blue Cross and the Association moved for summary judgment on the first five claims arguing that GHI could not have relied on Blue Cross' decision that the interest was reimbursable because GHI purchased Hillcrest before Blue Cross made such a written representation, and even if GHI did rely on Blue Cross' representation, such reliance did not, as a matter of law, give rise to a claim for relief under *Heckler v. Community Health Services,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). Finally, the Association and Blue Cross argued that these claims were barred by sovereign immunity. HHS joined in defendants' motion for summary judgment and raised the additional defense of official immunity.

The district court denied all aspects of defendants' motion for summary judgment on claims one through five. With respect to the sovereign immunity defense, it held that GHI's action was not against the United States and that a material question of

fact existed as to whether Blue Cross' actions in interpreting the Medicare regulations were outside the scope of its authority. It applied a balancing test when it ruled that the Association and Blue Cross were not federal officials for immunity purposes, weighing the injustice caused by denying an injured plaintiff its remedy against the pressures placed upon an individual serving as a federal official, were that individual to be held liable for actions authorized by the government. Having concluded that these parties could not be "deemed" federal officials, the district court found it unnecessary to decide whether Blue Cross was acting within the scope of its authority. It further stated that even if the Association and Blue Cross could be considered federal officials, the existence of a question of fact concerning the scope of Blue Cross' authority precluded summary judgment. Finally, it rejected defendants' claim that, as a matter of law, GHI could not rely on its fiscal intermediary's misrepresentation. GHI's complaint was distinguished from *Heckler*, on the following grounds: (1) *Heckler* addressed the question of whether the government could be estopped from recovering funds expended by a health care provider in reliance on an incorrect interpretation of the Medicare regulations by a fiscal intermediary rather than the question of whether a health care provider could hold its fiscal intermediary liable for the intermediary's own negligence; (2) Unlike the provider in *Heckler*, GHI received a written statement from Blue Cross that the return would constitute a reimbursable cost; (3) A material issue of fact existed as to whether it was reasonable for GHI to believe that Blue Cross had referred the matter to HHS.

## III. JURISDICTION

Ordinarily under 28 U.S.C. § 1291 (1982) denial of a motion for summary judgment is an unappealable order. *See Pacific Union Conf. of Seventh-Day Adventists v. Marshall*, 434 U.S. 1305, 1306, 98 S.Ct. 2, 3, 54 L.Ed.2d 17 (1977); *New York v. Nuclear Regulatory Comm'n*, 550 F.2d 745, 759 (2d Cir.1977). In *Cohen v. Beneficial Loan Corp.*, 337 U.S. at 546, 69 S.Ct. at 1225, the Supreme Court recognized that "[t]he effect of the statute is to disallow appeal from any decision which is tentative, informal or incomplete." Thus, we must first address the threshold question of whether there is jurisdiction to review the district court's order denying summary judgment based on some exception to § 1291 that permits an appeal from an interlocutory order.

■ In *Cohen*, the Supreme Court construed § 1291 as disallowing appeals from district court decisions that were nonfinal. *Id.* Even fully consummated decisions are not appealable when there are intermediate steps along the way to final judgment in which they will merge. For "[t]he purpose is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results." *Id.* For an interlocutory order, such as the one before us, to be appealable it "must [ (1) ] conclusively determine the disputed question, [ (2) ] resolve an important issue completely separate from the merits of the action, and [ (3) ] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Abney v. United States*, 431 U.S. 651, 658–59, 97 S.Ct. 2034, 2039–40, 52 L.Ed.2d 651 (1977); *In re Agent Orange Product Liability Litigation*, 745 F.2d 161, 163 (2d Cir.1984).

■ In *Coopers & Lybrand* the Supreme Court elaborated on the two distinct purposes served by the finality requirement of § 1291 and the statute's relationship to nonfinal orders that are appealable. First, § 1291 reflects a legislative decision that limiting appellate review to final orders "prevents the debilitating effect on judicial administration caused by piecemeal appeal disposition of what is, in practical consequence, but a single controversy." 437 U.S. at 471, 98 S.Ct. at 2459 *quoting Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974).

Second, the Court emphasized that the final judgment rule preserves the proper balance between appellate and trial courts when disputed factual questions are involved. The Court reasoned:

[A]llowing appeals of right from nonfinal orders that turn on the facts of a particular case thrusts appellate courts indiscriminately into the trial process and thus defeats one vital purpose of the final-judgment rule—'that of maintaining the appropriate relationship between the respective courts.... This goal, in the absence of most compelling reasons to the contrary, is very much worth preserving.'

*Id.* at 476, 98 S.Ct. at 2462.

Defendants argue that we have jurisdiction to review the district court's decision denying their motion for summary judgment on the absolute immunity defense. The Supreme Court, they point out, has held on several occasions that orders denying summary judgment on claims of absolute or qualified immunity are immediately appealable as collateral final orders. *See, e.g., Mitchell v. Forsyth,* —— U.S. ——, 105 S.Ct. 2806, 2815–17, 86 L.Ed.2d 411 (1985) (Attorney General qualified immunity); *Nixon v. Fitzgerald,* 457 U.S. 731, 741–43, 102 S.Ct. 2690, 2696–97, 73 L.Ed.2d 349 (1982) (Presidential immunity); *Helstoski v. Meanor,* 442 U.S. 500, 505–08, 99 S.Ct. 2445, 2447–48, 61 L.Ed.2d 30 (1979) (Speech or Debate Clause); *Abney v. United States,* 431 U.S. at 659–62, 97 S.Ct. at 2040–41 (Double Jeopardy Clause).

Further, defendants contend that on appeal from a collateral final order, an appellate court has discretion to review other related nonappealable issues in the case "where '[t]here is sufficient overlap' " as defined by the doctrine of pendent appellate jurisdiction. *San Filippo v. U.S. Trust Co. of New York, Inc.,* 737 F.2d 246, 255 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985) *quoting Sanders v. Levy,* 558 F.2d 636, 643 (2d Cir.1976), *aff'd en banc,* 558 F.2d 646 (2d Cir.1977), *rev'd on other grounds sub nom. Oppenheimer Fund, Inc. v. Sand-*

*ers,* 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Therefore, according to defendants, we are not only vested with jurisdiction to review the denial of their claim of absolute immunity from suit, but also the related issue of whether GHI's misrepresentation claims are barred as a matter of law. We cannot agree.

■ Although defendants have alleged a nonfrivolous claim that fiscal intermediaries in the Medicare program are entitled to official immunity, *see San Filippo v. U.S. Trust Co. of New York, Inc.,* 737 F.2d at 254–55, this appeal must be dismissed. Defendants' claim of absolute immunity is not within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action...." *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225. We reach this conclusion for two reasons. First, the immunity question cannot be decided without addressing GHI's underlying claims on the merits, including such essential and disputed questions of fact as, for example, whether Blue Cross acted within the scope of its authority. At this stage in the litigation the immunity issues presented are not solely questions of law. *See Coopers & Lybrand,* 437 U.S. at 476, 98 S.Ct. at 2462 (disputed factual questions preclude appeal of nonfinal order); *Evans v. Dillahunty,* 711 F.2d 828, 830 (8th Cir.1983) (motions for summary judgment based upon absolute or qualified immunity are appealable only if the underlying facts are undisputed and the immunity question is solely a question of law).

■ Second, to force GHI to litigate its claims against Blue Cross and the government separately when the claims and factual issues are "but a single controversy" results in an inefficient use of judicial resources. *Coopers & Lybrand v. Livesay,* 437 U.S. at 471, 98 S.Ct. at 2459 *quoting Eisen,* 417 U.S. at 170, 94 S.Ct. at 2149. Were we to find that Blue Cross and the Association were not immune, we might be simultaneously disposing of GHI's FTCA claims against the government, since the two defendants would not have been acting as government agents. Given that "the

**498**

purpose [of § 1291] is to combine in one review all stages of the proceeding that effectively may be reviewed", *Cohen*, 337 U.S. at 546, 69 S.Ct. at 1225, judicial economy suggests that all of the closely intertwined immunity issues—including those raised but not now before us under the FTCA—proceed together in the district court before the same judge. Assuming a trial, the jury and non-jury actions doubtless can be tried in one consolidated action with joint discovery and appropriate allocation of decision-making authority so as to result in one final judgment that will be effectively reviewable.

## IV.  CONCLUSION

For the foregoing reasons, this appeal from a nonfinal interlocutory order denying summary judgment is dismissed for lack of appellate jurisdiction.