558 A.2d 385

**STATE of Maryland**

v.

**Pelmar J. JETT, Jr.**

**No. 88, Sept. Term, 1988.**

Court of Appeals of Maryland.

May 31, 1989.

Carmen M. Shepard, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Steven G. Hildenbrand, and Carolyn A. Quattrocki, Asst. Attys. Gen., all on brief), Baltimore, for petitioner.

Howard M. Shemler and Edward J. Connor, both on brief, Camp Springs, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

RODOWSKY, Judge.

In this case the State of Maryland (State) seeks to appeal the denial of its motion to dismiss a tort claim asserted against it. The State characterizes the ruling as rejecting its sovereign immunity defense and contends that the collateral order doctrine permits immediate appeal. For the reasons set forth below, we shall dismiss the appeal.

Appellee, and plaintiff below, Pelmar J. Jett, Jr. (Jett), filed a complaint naming only the State as defendant. Jett alleged that in September 1986 he had been negligently injured, falsely imprisoned and falsely arrested by "personnel of the Prince George's County Sheriff's Department" who were "[S]tate officials pursuant to the Constitution of the State of Maryland." Jett further alleged having made written claim with the State Treasurer in compliance with the Maryland Tort Claims Act, Md.Code (1984, 1988 Cum. Supp.), §§ 12–101 through –110 of the State Government Article (the Act) and that no decision had been made on his claim by the Treasurer within the time provided under the Act. The State moved to dismiss on the ground that "[n]o liability can be imposed on [it] because the individuals within the Office of the Sheriff of Prince George's County alleged to have committed the acts complained of are neither State officials nor State employees." In a written

opinion the circuit court identified two issues: "Whether or not a deputy sheriff is a State agent, and if a deputy sheriff is a state agent, can the State of Maryland be sued for its agent's conduct under the [Act.]" The court answered both questions affirmatively.

From the denial of its motion the State appealed to the Court of Special Appeals. We granted the State's petition for a writ of certiorari which presented the question: "Does the [Act] encompass claims against a Prince George's County deputy sheriff thereby transferring to the State the County's obligation to pay the expenses associated with liabilities arising from operation of the sheriff's office?" As to appealability the petition submitted that "[t]he order denying the State of Maryland sovereign immunity is immediately appealable under the collateral order doctrine."

The order denying the State's motion to dismiss is not a final judgment on the merits of the litigation. "We have long recognized, however, a narrow class of orders, referred to as collateral orders, which are offshoots of the principal litigation in which they are issued and which are immediately appealable as 'final judgments' without regard to the posture of the case." *Harris v. Harris,* 310 Md. 310, 315, 529 A.2d 356, 358 (1987). For an order to be appealable under the collateral order doctrine it must (1) conclusively determine the disputed question, (2) resolve an important issue, (3) be completely separate from the merits of the action, and (4) be effectively unreviewable on appeal from a final judgment. *See Bunting v. State,* 312 Md. 472, 477, 540 A.2d 805, 807 (1988); *Clark v. Elza,* 286 Md. 208, 213, 406 A.2d 922, 925 (1979). In this case the collateral order doctrine does not apply because the challenged ruling is not completely separate from the merits of the action and because the ruling can be effectively reviewed on appeal from a final judgment.

At the first level of analysis the review sought by the State is from a ruling on a point of agency law, not of sovereign immunity. Essentially the State asserts that it

bears no *respondeat superior* liability for a tort allegedly committed by a deputy sheriff of Prince George's County in the scope of that individual's duties as a deputy sheriff. Demonstrating agency is an essential part of Jett's causes of action against the State on the tort theories advanced in the complaint. Only if the State is held liable under agency law does the question of the State's immunity become an issue. If final judgment is adverse to the State, the agency question can be reviewed at that time.

The State, however, labels the interlocutory order a denial of the State's allegedly applicable sovereign immunity defense. Relying on *State v. Hogg*, 311 Md. 446, 535 A.2d 923 (1988), the State asserts that immediate appeal is permitted from an interlocutory order denying the defense of sovereign immunity in order to preserve the State's immunity from suit, a concomitant of its immunity from paying damages. In this argument the State approaches the interlocutory order from the standpoint of the Act.[1]

---

1. The Maryland Tort Claims Act in relevant part provides:
   "§ 12–101. 'State personnel' defined.
   In this subtitle, unless the context clearly requires otherwise, 'State personnel' means:
   . . . .
   (4) an individual who, with or without compensation, exercises a part of the sovereignty of the State. . . ."
   "§ 12–104. Waiver of immunity.
   (a) *In general.*—Subject to the exclusions and limitations in this subtitle, the immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent of insurance coverage under Title 9 of the State Finance and Procurement Article.
   . (b) *Exclusions and limitations.*—Immunity is not waived under this section for:
   (1) punitive damages;
   (2) interest before judgment;
   (3) a claim that arises from the combatant activities of the State militia during a state of emergency;
   (4) any tortious act or omission of State personnel that:
   (i) is not within the scope of the public duties of the State personnel; or
   (ii) is made with malice or gross negligence; or
   (5) a cause of action that law specifically prohibits.

The State submits that the expenses of sheriffs' offices in Maryland are the responsibilities of the respective counties, that the waiver of immunity as to a tort action in § 12–104(a) does not apply to torts of deputy sheriffs and that, under *Hogg*, this denial of the State's residual immunity defense is immediately appealable. We interpret the argument to be that Prince George's County Deputy Sheriffs are within a class of persons who may be considered State agents for some purposes but who are not embraced within the waiver of immunity under the Act, as determined by a proper construction of the Act. By packaging its argument in terms of the Act, the State does not bring the interlocutory order within the collateral order doctrine.

If this case presented an appeal by the State from an adverse final judgment, and if the appellate court agreed with the State's construction of the Act, the appellate court could assume tortious conduct by the deputy sheriff and assume agency, in order to decide the case favorably to the State solely on the statutory construction issue concerning scope of the waiver of immunity. But this is not an appeal

---

(c) *Payment of claims exceeding coverage.*—(1) The Treasurer may pay from the State Insurance Trust Fund all or part of that portion of a tort claim which exceeds the coverage obtained under Title 9 of the State Finance and Procurement Article under the following conditions:

(i) the tort claim is one for which the State and its units have waived immunity under subsections (a) and (b) of this section;

(ii) a judgment or settlement has been entered granting the claimant damages to the full amount of coverage under Title 9 of the State Finance and Procurement Article; and

(iii) the Board of Public Works, with the advice and counsel of the Attorney General, has approved the payment.

(2) Any payment of part of a settlement or judgment under this subsection does not abrogate the sovereign immunity of the State or any units beyond the waiver provided in subsections (a) and (b) of this section."

"§ 12–105. Immunity of State personnel.

(a) *In general.*—State personnel are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity under this subtitle, even if damages exceed the limits of that waiver."

from a final judgment. The issue presented is not independent of the predicate issues that could be assumed adversely to the State on an appeal from a final judgment. In short, where, as here, the agency question is contested, the statutory construction question is not independent of the merits.

In this respect the instant matter is analogous to *Group Health Inc. v. Blue Cross Ass'n*, 793 F.2d 491 (2d Cir.1986), *cert. denied*, 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 758 (1987). There a hospital sued in tort against the Blue Cross plan of metropolitan New York, the national association of those plans, and the United States Department of Health and Human Services (HHS). Blue Cross, as the fiscal intermediary for the Medicare program, determined the amount of reimbursements due to providers of Medicare services and made the reimbursements. Blue Cross had advised the hospital that certain mortgage loan interest would be reimbursable but, after the hospital had entered into the contemplated transaction, HHS on audit disallowed the hospital's claim to reimbursement. The defendants by summary judgment motion raised an absolute immunity defense which was denied. They sought to appeal that denial. Their argument, as described by the Second Circuit, resembles that of the State in the matter before us.

> "The Supreme Court, [the defendants] point out, has held on several occasions that orders denying summary judgment on claims of absolute or qualified immunity are immediately appealable as collateral final orders. *See, e.g., Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2815–17, 86 L.Ed.2d 411 (1985) (Attorney General qualified immunity); *Nixon v. Fitzgerald*, 457 U.S. 731, 741–43, 102 S.Ct. 2690, 2696–97, 73 L.Ed.2d 349 (1982) (Presidential immunity) [.]"

793 F.2d at 497. The Second Circuit nevertheless dismissed the appeal because "the immunity question cannot be decided without addressing [the hospital's] underlying claims on the merits, including such essential and disputed questions of fact as, for example, whether Blue Cross acted within the

scope of its authority." *Id.* In the case before us the agency question is similarly interwoven with the merits, even if that question develops to be one of law on undisputed facts.

In any event, even if there were no agency issue, and even if we assume that the substance of the circuit court's ruling was that the Act's waiver of sovereign immunity applied here, that analysis would not support application of the collateral order doctrine under the *Hogg* rationale.

"[I]n the context of what was before the Court," (*Bunting,* 312 Md. at 482 n. 9, 540 A.2d at 809 n. 9) the alleged denial of sovereign immunity in *Hogg* involved Maryland common law sovereign immunity in its full, unrestricted vigor.[2] The question presented was whether sovereign immunity permitted common law recoupment by defendants sued by the State. Procedurally the State appealed from the denial of a motion to dismiss, based on sovereign immunity, filed in opposition to a counterclaim in which the defendants had sought recoupment. We analogized the rejection of the sovereign immunity defense to the rejection of public official immunity defenses where the United States Supreme Court has applied the collateral order doctrine. *See Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (denial of a claim of qualified immunity, to the extent it turns on an issue of law); *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (absolute privilege).[3] A component of the public

---

**2.** We limit our discussion to the State's sovereign immunity and do not include governmental immunity of municipalities which, in application, can require fine distinctions to be made between proprietary and governmental activities.

**3.** A long line of United States Courts of Appeal decisions have been applying the collateral order doctrine to denial of absolute and qualified immunity defenses asserted by public officials who were sued for alleged torts, either of the federal constitutional variety or based on state law. *See, e.g., Clark v. Link,* 855 F.2d 156 (4th Cir.1988) (qualified); *Schlegel v. Bebout,* 841 F.2d 937 (9th Cir.1988) (absolute); *Childress v. Small Business Admin.,* 825 F.2d 1550 (11th Cir.1987) (qualified); *Tomer v. Gates,* 811 F.2d 1240 (9th Cir.1987) (qualified);

official privileges there involved was the policy of protecting the defendant from standing trial. *Cf. Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (collateral order doctrine applies to denial of claim of former jeopardy which protects against standing trial for the second time). Maryland common law sovereign immunity similarly embraces a component of freedom from suit inasmuch as two conditions must be met to effect a waiver of that immunity. "First, the Legislature must authorize suits for damages, and second, there must be provision for the payment of judgments." *Kee v. State Highway Admin.*, 313 Md. 445, 455, 545 A.2d 1312, 1317 (1988).[4]  *Hogg* in-

---

*Barrett v. United States*, 798 F.2d 565 (2d Cir.1986) (both); *Huron Valley Hosp. v. City of Pontiac*, 792 F.2d 563 (6th Cir.) (qualified), *cert. denied*, 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986); *Lojuk v. Johnson*, 770 F.2d 619 (7th Cir.1985) (both), *cert. denied*, 474 U.S. 1067, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986); *Krohn v. United States*, 742 F.2d 24 (1st Cir.1984) (both); *Metlin v. Palastra*, 729 F.2d 353 (5th Cir.1984) (qualified); *Forsyth v. Kleindienst*, 729 F.2d 267 (3d Cir. 1984) (absolute), *aff'd in part and rev'd in part, Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Williams v. Collins*, 728 F.2d 721 (5th Cir.1984) (absolute); *Bever v. Gilbertson*, 724 F.2d 1083 (4th Cir.) (absolute), *cert. denied*, 469 U.S. 948, 105 S.Ct. 349, 83 L.Ed.2d 285 (1984); *Evans v. Dillahunty*, 711 F.2d 828 (8th Cir.1983) (both); *Chavez v. Singer*, 698 F.2d 420 (10th Cir.1983) (absolute); *McSurely v. McClellan*, 697 F.2d 309 (D.C.Cir.1982) (both).

State court decisions to the same effect include: *Robinson v. Beaumont*, 291 Ark. 477, 725 S.W.2d 839 (1987) (qualified); *Kaplan v. Pointer*, 501 A.2d 1269 (D.C.App.1985) (absolute); *Breault v. Chairman of the Bd. of Fire Comm'rs of Springfield*, 401 Mass. 26, 513 N.E.2d 1277 (1987) (qualified), *cert. denied*, —— U.S. ——, 108 S.Ct. 1078, 99 L.Ed.2d 237 (1988); *Anderson v. City of Hopkins*, 393 N.W.2d 363 (Minn.1986) (qualified); *Richardson v. Chevrefils*, 131 N.H. 227, 552 A.2d 89 (1988) (qualified); *Stahl–Rider, Inc. v. State*, 48 N.C.App. 380, 269 S.E.2d 217 (1980) (governmental).

4.  A more complete statement of the traditional rule is found in *University of Maryland v. Maas*, 173 Md. 554, 558–59, 197 A. 123, 125 (1938) where we said:

"The decisions in this state go further than holding that without legislative sanction an arm of the state government ... may not be sued, and are to the effect that, even though there is a legislative authorization to sue, such suits may not be maintained unless funds are available or may be made available by the agency itself for the purpose of paying the claim for damages that may be established by the suit."

volved the scope of this immunity doctrine and not the construction of the Act.

In the case now before us the State contends that the circuit court misconstrued the Act by holding that torts committed by Prince George's County deputy sheriffs are embraced within the Act's waiver of immunity. When the alleged denial of a sovereign immunity defense turns on the construction or application of the Act, the rationale underlying *Hogg*'s reliance on the collateral order doctrine disappears. No longer does the concept of sovereign immunity embody a strong element of freedom from suit because the Act contains a broad consent to suit. No longer is there heavy emphasis on protecting state officials and employees from disruption in the performance of their duties by defending against tort claims. Rather, under the Act, emphasis shifts to protection of the public treasury by limiting the financial exposure. This is accomplished through a number of techniques including limiting the State's waiver to the extent of insurance coverage procured, § 12–104(a), and by excluding from the waiver claims for punitive damages and interest before judgment, § 12–104(b)(1) and (2). The Act does not preserve or provide immunity from defending a claim which is predicated on the theory that the Act applies, whether or not that predicate ultimately proves to be incorrect.

Accordingly, the issue presented here, unlike "double jeopardy claims and a very few other extraordinary situations," is "effectively reviewable after the termination of the trial because it [does not involve] a 'right' to avoid the trial itself[.]" *Bunting*, 312 Md. at 481–82, 540 A.2d at 809.

APPEAL DISMISSED. COSTS TO BE PAID BY THE APPELLANT.

ELDRIDGE, Judge, concurring:

I concur in the result. *See Bunting v. State*, 312 Md. 472, 482, 540 A.2d 805, 809 (1988) (concurring opinion).