UNITED STATES of America Drug
Enforcement Agency,
Plaintiff–Appellee,

v.

228 ACRES OF LAND AND DWELLING
LOCATED ON WHITES HILL ROAD
IN CHESTER, VT., et al., Defendants,

Saverio Moreno, Claimant–Appellant.

No. 1358, Docket 90–6072.

United States Court of Appeals,
Second Circuit.

Argued May 15, 1990.
Decided Oct. 17, 1990.

Christopher B. Baril, Rutland, Vt., Asst. U.S. Atty., D. Vt. (George J. Terwilliger, III, U.S. Atty., D. Vt., Helen M. Toor, Asst.

U.S. Atty., of Counsel), for plaintiff-appellee.

Murray Appleman, New York City, for claimant-appellant.

Before OAKES, Chief Circuit Judge, PRATT, Circuit Judge, and LEVAL, District Judge for the Southern District of New York, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

Claimant Saverio Moreno appeals from decrees of forfeiture granted by James S. Holden, *Judge* of the United States District Court for the District of Vermont, in two forfeiture actions, which were consolidated in the district court in anticipation of trial, and which are being heard as a single appeal. Moreno argues that the district court erred in denying his motion for summary judgment in the first action. He made no such motion in the second action. For the reasons discussed below, we affirm the district court's order denying Moreno's summary judgment. Furthermore, because the district court did not abuse its discretion in granting the defaults that required dismissal of Moreno's claims in both forfeiture actions, we affirm the judgments of the district court.

## I. BACKGROUND

This appeal involves two separate in rem civil forfeiture actions brought by the government in the District of Vermont after claimant Moreno pled guilty in the United States District Court for the District of New Jersey to a conspiracy to distribute heroin. In the first action, the government sought the forfeiture of six parcels of real property, a $50,000 mortgage interest on another parcel, five pieces of John Deere farming equipment, and four all-terrain vehicles. In the second, the government sought the forfeiture of a collection of antiques.

Moreno filed claims in both actions, but both claims were ultimately dismissed because he failed to fulfill his obligations as a litigant. In the first action, his claim was dismissed under Fed.R.Civ.P. 37 for failing to comply with the district court's dis-covery order; his claim in the second action was dismissed under Fed.R.Civ.P. 16(f) for failing to appear at a pretrial conference. On this appeal Moreno does not challenge the decisions of the district court holding him in default; rather, he focuses his appeal primarily on his challenge to the government's claim of probable cause for the forfeiture, a challenge that the district court rejected when it denied Moreno's motion for summary judgment made in the first action. In addition, Moreno attacks the reliability of the affidavit by the DEA agent, used by the government to establish probable cause. He also advances a perfunctory challenge to the constitutionality of the forfeiture statutes.

In order to clarify the issues on appeal, we must review the procedural history of these two actions in some detail.

### A. *The first action.*

On August 2, 1988, the government filed a civil forfeiture complaint under 21 U.S.C. § 881(a)(6), seeking the forfeiture of six parcels of real property, a mortgage interest, five pieces of farming equipment, and four all-terrain vehicles. Copies of the summons and complaint were mailed on August 8th to Moreno, who acknowledged receipt thereof on August 24, 1988. Pursuant to a warrant issued by the district court, the subject properties were seized on August 8th and 9th. Moreno, who was in prison, filed his claim *pro se* on September 1st, and through counsel, his answer to the government's complaint on October 11th. Joanne Niece, who with Moreno jointly owned some of the subject parcels and to whom Moreno had transferred full title of other parcels, also filed a claim to some of the properties.

In December 1988 the parties agreed on, and the district court approved, a discovery schedule that contemplated completion of all discovery by July 15, 1989. Moreno failed to respond to the government's first discovery request, but the government twice granted his requests for extensions. When Moreno still failed to respond, however, the government moved to compel discovery. Claiming that the length of the

interrogatories and his distance from the court had made compliance difficult, Moreno requested still more time. The court ordered Moreno to comply by March 15, 1989.

When Moreno failed to meet even this deadline, the government, on March 17, 1989, moved for a default judgment. In opposition, Moreno filed a memorandum of law. In addition, claiming that there was no probable cause for forfeiture, he moved for a summary judgment dismissing the action. The district court denied both motions, but assessed nominal attorney's fees against Moreno, and fixed a further deadline for Moreno to comply with the government's discovery demands.

Moreno still failed to comply, however, and on June 8, 1989, the government moved again to compel discovery. Moreno filed a response on June 14, 1989, and the government, on June 21st, then made its second motion for a default. This time, the district court, on July 25, 1989, granted the government's motion for a default and dismissed Moreno's claim on the ground that he had failed to provide discovery as required by Fed.R.Civ.Proc. 37. Dismissal of Moreno's claim left Joanne Niece's claim against some of the subject properties as the only unresolved matter in the first action.

### B. The Second Action.

On October 18, 1988, the government commenced the second civil forfeiture action, which sought the forfeiture of a number of antiques that the government had found in two of the houses located on parcels that were the subject of the first forfeiture action. The antiques were formally seized, pursuant to a warrant, on October 24, 1988. On November 11, 1988, Moreno filed both his answer to the complaint and his claim to the antiques; he was the only claimant.

By the beginning of August 1989, Niece was the only claimant left in the first proceeding, and Moreno was the only claimant in the second. Because of overlapping factual and legal issues in the two actions, the government moved for consolidation. On August 8, 1989, the district court granted the motion to consolidate and scheduled a pretrial conference for October 10, 1989. Neither Moreno nor his attorney appeared for the conference, and they submitted no pretrial brief, contrary to the court's earlier direction.

The government then moved for a default judgment against Moreno in the second action, and on December 21, 1989, the court granted that motion. Two days earlier the court had approved the settlement of Niece's claim in the first proceeding.

With all claims in both actions thus disposed of—Niece's claim in the first action by settlement, and Moreno's claims in both actions by defaults—the court signed final decrees of forfeiture in the two actions on December 21, 1989.

## II. DISCUSSION

### A. Issues on Appeal.

Moreno has not challenged the defaults; indeed, he made no motion in the district court to be relieved of either one. On appeal, moreover, he has offered no explanation and presented no justification for his litigation conduct. No circumstance that might otherwise mitigate the defaults is apparent on this record. Absent any legal reason, therefore, as to why these determinations were improper, the district court did not abuse its discretion in entering the defaults and granting judgments to the government.

Moreno contends, however, that the defaults are in effect irrelevant, because the government's case was legally deficient in that at the very outset the government lacked probable cause for the forfeitures. Particularly, he argues that the district court erred in determining on his motion for summary judgment that the government had probable cause to believe that the defendant properties were forfeitable.

In opposition, the government first seeks dismissal of the appeal in the first action, claiming that the summary judgment order, which Moreno concedes is the primary target of that appeal, was a

nonfinal order that cannot be reviewed on appeal. The government confuses, however, the concepts of appealability and reviewability. An order that denies summary judgment or grants partial summary judgment cannot by itself be the basis for an appeal, since it is nonfinal. *See e.g., Group Health Inc. v. Blue Cross Ass'n,* 793 F.2d 491, 496 (2d Cir.1986). But simply because it cannot be the basis for an appeal, this does not mean that such an order can never be subject to review. On the contrary, upon the entry of a final judgment, such as the judgments of forfeiture in these cases (even when such judgments are granted on default), the earlier, nonfinal orders that affect those judgments become subject to appellate review. An order on summary judgment, if not a final order that can be immediately appealed, does "fall[ ] within the large class of orders that are indeed reviewable on appeal after final judgment * * *." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 377, 101 S.Ct. 669, 675, 66 L.Ed.2d 571 (1981). Thus, the district court's order denying summary judgment to Moreno and granting partial summary judgment to the government on the issue of probable cause is reviewable on this appeal from the final decree of forfeiture.

On oral argument Moreno's counsel made the point that his only opposition to the government's forfeiture claim was advanced in the legal issues tendered by his summary judgment motion. Having lost that motion on the law, and having no opposition to the government's factual claims, he saw no need for discovery in the case and no need to require a trial on the merits. While we think that greater candor with the district court and with the U.S. Attorney's office about his view on this issue would have been preferable, we do not accept the government's argument that we should now refuse to review the merits of Moreno's challenge of the district court's order on the summary judgment motion.

We also note in passing that Moreno made no similar summary judgment motion in the second proceeding, so that even if we were to reverse in the first action, there would be no basis to grant relief in the second. This difference in procedure is of no practical significance, however, because as discussed below, the district court was correct in denying Moreno's summary judgment motion and finding probable cause in the first action, and we are therefore affirming in all respects.

We now turn to a discussion of the only substantial issue in the case: whether the district court erred when it denied Moreno's motion for summary judgment and determined that the government had established probable cause for forfeiture of the properties that were the subject of the first action.

### B. *Probable Cause.*

■ The government brought these forfeiture actions under 21 U.S.C. § 881. Subdivision (a) of that section provides that "the following shall be subject to forfeiture to the United States and no property rights shall exist in them:". Subparagraph (6) sets forth as one group of properties subject to forfeiture:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, [and] all proceeds traceable to such an exchange * * *.

According to the government, the subject properties are "proceeds traceable" to "things of value furnished * * * in exchange for a controlled substance"—in other words, they are the fruits of illegal drug activity.

Subdivision (d) of § 881 makes the provisions of law relating to seizures and forfeitures under the customs laws also applicable to seizures and forfeitures under § 881. In effect, therefore, civil forfeitures under § 881 are governed by the procedures of 19 U.S.C. § 1615. For present purposes, the most significant aspect of § 1615 is that it places on the government the burden of showing probable cause for instituting the action—that is, probable cause to believe that the properties are the fruits of illegal

drug activity, and are therefore subject to forfeiture under § 881(a).

Once probable cause is established, "the burden of proof shall lie upon" any person who claims the forfeited property. 19 U.S.C. § 1615. Here, Moreno did not seek to satisfy his burden of proof; instead, he attacked the government's side of the case by moving for summary judgment on the ground that there was no probable cause for the forfeiture. In a careful and thorough analysis of the evidence presented to him on the motion, the district judge not only denied Moreno's motion, but also granted partial summary judgment to the government, by ordering "that the burden shift to [Moreno] to prove by a preponderance of the evidence that the defendant properties claimed are not subject to forfeiture." On this appeal, we must determine whether the district court correctly decided the motion.

Since the controlling statute, 19 U.S.C. § 1615, provides that the issue of probable cause is "to be judged of [and] by the court", and since Moreno does not dispute the evidentiary facts advanced by the government, the usual standard for review of a summary judgment motion—whether a genuine issue of material fact exists—is inapplicable here. Instead, the applicable standard is whether the government was, on this record, entitled as a matter of law to partial summary judgment on the issue of probable cause. See Fed.R.Civ.P. 56(c).

The only factual information before the court on this motion was the affidavit of DEA agent James Sullivan, sworn to before United States Magistrate Jerome J. Niedermeier on August 2, 1988. It showed first, that on January 29, 1988, in the United States District Court for the District of New Jersey, Moreno had pled guilty to conspiracy to distribute heroin. When he was arrested, Moreno possessed one kilogram of 90% pure heroin.

Moreno argues that his 1988 conviction cannot be used as evidence of probable cause, because the activities for which he was convicted occurred after he had purchased most of the real property and equipment that the government claims should be forfeited. Consequently, he claims that the court could not reasonably infer from his guilty plea and its related activities that the earlier-acquired properties were the proceeds of a narcotics exchange.

We find no fault, however, in the determination of the district court. To begin with, "[t]he Government must have probable cause to connect the property with narcotics activity, but need not link the property to a particular transaction." United States v. Banco Cafetero Panama, 797 F.2d 1154, 1160 (2d Cir.1986). There was ample information before the district court to support an inference that the subject properties were, as required for forfeiture under 21 U.S.C. § 881(a)(6), "proceeds traceable to" monies furnished "in exchange for a controlled substance" in violation of the drug laws. The heroin seized by the government at the time of Moreno's New Jersey arrest was 90% pure. According to the Sullivan affidavit, individuals who possess kilogram quantities of such high purity heroin often have a prominent role in the criminal enterprise and are close to the original narcotics source. The United States Sentencing Commission similarly recognizes that "[the] purity of the controlled substance, particularly in the case of heroin, * * * is probative of the defendant's role or position in the chain of distribution. * * * [T]he fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs." United States Sentencing Commission, Federal Sentencing Guidelines Manual § 2D1.1., Application Note 9, at 2.46 (1989). Thus, the court could reasonably infer not only that Moreno occupied a fairly high position on the drug distribution chain, but also that he had been involved in illegal narcotics activities for a substantial period of time before his actual arrest.

Moreover, almost all of the subject properties were purchased with large sums of cash, behavior which, according to the Sullivan affidavit, is characteristic of drug traffickers. In his filed claim in the first action, Moreno asserted that he had paid

for his properties in Vermont from the earnings he made from four businesses on "which income taxes were paid". His tax returns, however, fall far short of supporting that claim. For the entire eight-year period from 1979 through 1987, Moreno's after-tax income totalled $154,507. The Vermont properties cost Moreno far more than that in cash. For example, Moreno purchased 228 acres of property in Chester, Vermont for $260,000. At the closing, on July 9, 1985, Moreno paid $100,000 of the purchase price in cash. During August and November of 1985, Moreno also paid $90,280 in cash for farm and construction equipment, including a bulldozer for which Moreno paid $59,500 in five, ten, and twenty dollar bills. His cash purchases for the year 1985 alone thus exceeded his available after-tax monies for the entire eight-year period.

In the following year, 1986, the picture was similar. During 1986, Moreno purchased four additional parcels. On April 4, 1986, he paid $45,000 in cash for 9.9 acres of land adjoining the 228 acres he had purchased in 1985. On June 18, 1986, he purchased a commercial building in Ludlow, Vermont, for $165,000, paying $50,000 of the purchase price in cash. On November 11, 1986, Joanne Niece took title to two properties in Ludlow. Moreno handled the negotiations for these purchases and provided the money, paying $95,000 in five, ten, and twenty dollar bills for the first property, and $110,000 in cash for the other. This brought to $300,000 his total cash outlays for real estate in 1986.

On February 19, 1987, Moreno purchased another parcel in Ludlow, and provided the seller with a cash down-payment of $130,000. Shortly before the forfeiture complaint was filed, Moreno resold this parcel and took back a purchase money mortgage of $50,000; as a result, the government sought forfeiture of the mortgage, rather than of the real property itself. Moreno also bought four new all-terrain vehicles in 1987, paying $2,000 of the more than $10,000 aggregate purchase price in cash.

The district court could reasonably infer that it was unusual to pay for expensive property such as real estate and heavy construction equipment with cash; it could also find even more unusual Moreno's payments for some of the purchases with five ten, and twenty dollar bills. Moreover, as pointed out by DEA agent Sullivan, drug dealers commonly make large cash purchases in order to avoid triggering bank reporting requirements.

Moreno failed to account adequately for his possession of such large sums of cash. He made no claim of prior gifts or of earlier investments. Instead, he claimed that the funds were after-tax profits from his jewelry businesses, but he failed to offer any bills, receipts or other records to prove that his named businesses were actually capable of generating such large sums of cash. Even more damning is the fact that his cash expenditures for the period were approximately four times the amount of his available income for the years in question. While cash purchases of this size are not per se illegal, they certainly are unusual, if not suspect, and, as here, when they are falsely explained, they readily fall into the category of "circumstances in which wholly lawful conduct might justify the suspicion that criminal activity is afoot." *Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980).

Finally, Moreno had made various false statements about his purchases. For example, on Vermont tax returns and sales invoices he had listed a false social security number. In a pleading filed in his New Jersey criminal case, he falsely stated that he had no money or assets.

In sum, Moreno's attempts to conceal his income and assets, his drug arrest in possession of a kilogram of high-purity heroin followed by his guilty plea of conspiracy to distribute heroin, his unexplained accumulation of the substantial cash used to acquire the forfeited parcels, and his demonstrably false claim that he had paid for these parcels with income from businesses on which the "income taxes were paid", together provided the district court with probable cause to believe that the forfeited properties were "proceeds traceable to"

Moreno's illegal drug activities and were therefore forfeitable under § 881(a)(6).

## C. *Other Claims.*

■ Moreno's two other claims require only passing comment. First, he urges us to reject the entire Sullivan affidavit as a foundation for probable cause, because it relies on expert opinion and is "littered with hearsay." We see no defect in the district court's acceptance of the opinions of Sullivan, a DEA agent with fifteen years experience, as to the practices of drug dealers generally. As to the hearsay included in Sullivan's lengthy affidavit, it has long been established in both criminal and forfeiture contexts that findings of probable cause may be grounded on reliable hearsay. *See United States v. Property at 4492 S. Livonia Road, Livonia,* 889 F.2d 1258, 1267 (2d Cir.1989) ("Probable cause * * * traditionally may be established by hearsay.") (citation omitted). The detail and specificity of Sullivan's affidavit, viewed in the light of Moreno's express declination to present evidence challenging the government's evidence of probable cause, leaves nothing in the record to undercut the district court's finding of probable cause.

■ Moreno also suggests in passing that the burden-shifting procedure of the statutory forfeiture scheme is unconstitutional when applied to the proceeds of drug activity rather than to property that is itself contraband. His argument seems to be that real property is "somewhat sacred", and so when real property constitutes the "proceeds" to be forfeited, a higher standard than that of probable cause should be applied. We find nothing unconstitutional in congress's allocation of the burdens of proof in forfeiture cases, and therefore also reject this argument.

## III. CONCLUSION

The forfeiture decrees appealed from are affirmed.