# United States Court of Appeals for the Federal Circuit

---

**MODERN FONT APPLICATIONS LLC,**
*Plaintiff-Appellant*

**v.**

**ALASKA AIRLINES, INC.,**
*Defendant-Appellee*

---

2021-1838

---

Appeal from the United States District Court for the District of Utah in No. 2:19-cv-00561-DBB-CMR, Judge David Barlow.

---

Decided:  December 29, 2022

---

PERRY S. CLEGG, Johnson & Martin, P.A., Salt Lake City, UT, argued for plaintiff-appellant.

SHAWN G. HANSEN, Nixon Peabody LLP, Los Angeles, CA, argued for defendant-appellee.  Also represented by SARAH ANDRE, SETH D. LEVY; ERIN HUNTINGTON, Albany, NY.

---

Before NEWMAN, REYNA, and CUNNINGHAM, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* CUNNINGHAM.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

CUNNINGHAM, *Circuit Judge.*

Modern Font Applications LLC seeks an interlocutory appeal to challenge an order of the United States District Court for the District of Utah, which affirmed a magistrate judge's decision deeming MFA's in-house counsel a "competitive decisionmaker" and maintaining Alaska Airlines, Inc.'s Attorneys' Eyes Only designations as to its source code. *Mod. Font Applications v. Alaska Airlines*, No. 19-cv-00561, 2021 WL 364189, at *1 (D. Utah Feb. 3, 2021) ("*Magistrate Decision*"), *aff'd sub nom. Mod. Font Applications LLC v. Alaska Airlines Inc.*, 2021 WL 3729382 (D. Utah Mar. 2, 2021) ("*District Court Order*").  Because we lack jurisdiction over MFA's interlocutory appeal under the collateral order doctrine, we dismiss.

## I.    BACKGROUND

To avoid unnecessary delay from parties arguing or litigating the form of a protective order, the District of Utah found good cause exists to adopt a "Standard Protective Order"[1] in every case. D.U. Civ. R. 26-2(a).[2]  Pursuant to that protective order, Alaska designated certain source code files as "CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY," which precluded MFA's in-house counsel from accessing those materials under the Standard Protective Order.    J.A. 74, 79; Standard

---

[1]    The District of Utah's Standard Protective Order is available at: https://www.utd.uscourts.gov/sites/utd/files/Standard_Protective_Order.pdf.

[2]    The District of Utah's Local Rules of Civil Practice, effective December 2021, are available at: https://www.utd.uscourts.gov/sites/utd/files/Dec%202021%20Civil%20Rules.pdf.

Protective Order at 9–11.  When MFA challenged Alaska's designations, Alaska filed two motions to maintain its protective order designations.  J.A. 73–76, 98–100.  Before the court could resolve those motions, MFA filed Short Form Discovery Motion #4 to Amend the Standard Protective Order, seeking to permit its in-house counsel to access "all disclosed information," including documents designated Attorneys' Eyes Only and to add additional designations to the Standard Protective Order specific to source code. J.A. 109–11, 115–37.  At the magistrate judge's direction, the parties filed supplemental briefing to address the burden of proof required to maintain an Attorneys' Eyes Only designation and the standards for evaluating competitive decisionmaking.    J.A. 21–22, 191–93 (MFA briefing), 241–47 (Alaska briefing).

The magistrate judge granted Alaska's motions to maintain its protective order designations and denied MFA's motion to amend the protective order.  *Magistrate Decision*, at *4–6.  The magistrate judge found that Alaska had established that its source code contained trade secrets and merited "heightened protection."  *Id.* at *4.  The magistrate judge also declined to modify the protective order and permit MFA's in-house counsel to access Attorneys' Eyes Only documents because "the risk of inadvertent disclosure [of Alaska's confidential information] outweighs the risk of prejudice to Plaintiff."  *Id.* at *6.  In doing so, the magistrate judge concluded that MFA's in-house counsel was a "competitive decisionmaker" because of his licensing activities and because MFA's "entire business model revolves around the licensing of patents through litigation with the assistance of its in-house counsel."  *Id.* at *5.

The district court issued an order affirming the magistrate judge's decision.  *District Court Order*, at *1–3.  The district court explained that it would only modify or set aside the magistrate judge's non-dispositive order "if it is contrary to law or clearly erroneous."  *Id.* at *1. The district court affirmed the magistrate judge's decision to maintain

Alaska's protective order designations, explaining case law supported that "district courts regularly provide for additional restrictions on discovery to account for the unique characteristics of source code" and that MFA had "not identified any authority demonstrating otherwise." *Id.* at *3. The district court also affirmed the magistrate judge's decision declining to amend the protective order, explaining that MFA had failed to cite case law supporting its argument that it should not bear the burden of proof to modify the Standard Protective Order. *Id.* at *2. The district court stated that the magistrate judge properly evaluated MFA's counsel's activities, including his competitive decision-making, as required by our decision in *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984). *District Court Order*, at *2. The district court further explained that the magistrate judge had appropriately cited cases "for their relevance to in-house counsel's involvement in licensing making it a competitive decisionmaker." *Id.* at *3. In summary, the district court agreed that the magistrate judge's decision "is not contrary to law" or "clearly erroneous." *Id.*

MFA seeks an interlocutory appeal of this order.

## II.    DISCUSSION

MFA argues that we should hear its interlocutory appeal under the collateral order doctrine. Appellant's Br. 16–26. We disagree and conclude that we lack jurisdiction.

### A.  The Collateral Order Doctrine

Congress limited our jurisdiction to any appeal from a "final" decision of a district court "arising under[] any Act of Congress relating to patents," with only limited exceptions. 28 U.S.C. § 1295(a)(1); *see Bd. of Regents of the Univ. of Tex. Sys. v. Bos. Sci. Corp.*, 936 F.3d 1365, 1370 (Fed. Cir. 2019). Under the "final judgment rule," "a party may not appeal 'until there has been a decision by the district court that ends the litigation on the merits and leaves

nothing for the court to do but execute the judgment.'" *Bd. of Regents*, 936 F.3d at 1370 (quoting *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1308 (Fed. Cir. 2013) (en banc)).

The collateral order doctrine is a practical construction of the final judgment rule that permits review of not only judgments that "terminate an action," but also the "small class" of collateral rulings that are appropriately deemed "final." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–46 (1949)). Courts of appeals may allow interlocutory appeals of decisions that (1) are "conclusive;" (2) "resolve important questions separate from the merits;" and (3) are "effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995) (citing *Cohen*, 337 U.S. at 546).

The Supreme Court has repeatedly emphasized the limited scope of the collateral order doctrine, explaining that it should "never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Mohawk*, 558 U.S. at 106 (quoting *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)); *see also Will v. Hallock*, 546 U.S. 345, 350 (2006) ("emphasizing [the doctrine's] modest scope"). The limited application of the collateral order doctrine reflects the important policy concerns that "piecemeal appeals would undermine the independence of the district judge" and hinder judicial efficiency. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981); *see also* 15B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3914.23 (2d ed. Apr. 2022 update) ("Routine appeal from disputed discovery orders would disrupt the orderly progress of the litigation, swamp the courts of appeals, and substantially reduce the district court's ability to control the discovery process.").

Generally, pretrial discovery orders are not "final"—and therefore, not reviewable—under the collateral order doctrine. *Firestone Tire*, 449 U.S. at 377 ("[W]e have generally denied review of pretrial discovery orders."); *see also* 15B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3914.23 (2d ed. Apr. 2022 update) ("[T]he rule remains settled that most discovery rulings are not final."). Such discovery orders are generally unreviewable under the third requirement of the collateral order doctrine because they can be adequately reviewed after a final judgment.

When faced with similar pretrial discovery orders, we have held that they are not appealable under the collateral order doctrine. For example, in *Quantum Corp. v. Tandon Corp.*, we granted Quantum's motion to dismiss an interlocutory appeal to review an order granting a motion to compel disclosure of attorney opinion letters. 940 F.2d 642, 643–44 (Fed. Cir. 1991). In doing so, we noted that:

> [I]t is settled that discovery orders issued within the context of a primary proceeding are generally not appealable orders. In addition to not complying with the third requirement of the *Cohen* doctrine, such discovery orders may present issues not completely separate from the merits and thus the orders are not truly collateral under the second requirement of the *Cohen* doctrine.

*Id.* at 644 n.2 (citation omitted). And in *Amgen Inc. v. Hospira, Inc.*, we held that we lacked jurisdiction to review an order denying a motion to compel disclosure of cell-culture information. 866 F.3d 1355, 1358–60 (Fed. Cir. 2017). There, we again stated that "[s]uch orders are not reviewable at the interlocutory stage because they are reviewable from a final judgment." *Id.* at 1359.

### B. MFA's Appeal Must Be Dismissed

MFA's appeal does not satisfy the third requirement of the collateral order doctrine because it is reviewable after a final judgment. *See Swint*, 514 U.S. at 42. Numerous cases have ruled that such discovery orders are outside appellate jurisdiction because they can be reviewed after final judgment. *See, e.g.*, *Mohawk*, 558 U.S. at 108, 114; *Firestone Tire*, 449 U.S. at 377–78; *Quantum*, 940 F.2d at 644; *Amgen*, 866 F.3d at 1359–60.

MFA argues it will be "irreparably prejudic[ed] . . . both financially and in its ability to effectively evaluate and prosecute its claims" if the district court's order stands and interlocutory appeal is denied. Appellant's Br. 24–25, 36–38. MFA further contends that it "will suffer prejudice in the form of one of its key strategists and analysts being effectively removed from large portions of this case." Appellant's Br. 36. This prejudice, MFA contends, would be unlikely to serve as "ground for reversal of any adverse decision." Appellant's Br. 25, 36. MFA's prejudice arguments are unavailing.

The collateral order doctrine asks whether the order at issue would be "effectively unreviewable" in an appeal following final judgment, not whether the appellant would be unlikely to succeed when it later appeals. *See Swint*, 514 U.S. at 42. Even assuming MFA would be unlikely to secure reversal on final appeal, that is insufficient to satisfy the third requirement. *See Mohawk*, 558 U.S. at 110, 114 (affirming Eleventh Circuit's judgment dismissing appeal for lack of jurisdiction under collateral order doctrine despite recognizing "[m]ost district court rulings on [discovery] matters . . . are unlikely to be reversed on appeal").

Moreover, it is far from clear MFA will suffer prejudice. MFA has access to outside counsel, and MFA could hire

experts to support its technical analysis.[3]  *See* J.A. 37.  Any "prejudice" alleged by MFA from its in-house counsel lacking access to certain documents is merely speculative until a final judgment is complete.  *See Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 439 (1985).  And any evaluation of that prejudice would be intertwined with the merits of the case, violating the second requirement of the collateral order doctrine.  *Id.* at 439–40.

Nor do we agree with MFA's argument about financial prejudice.  Even if MFA were to suffer financial hardship from the district court's order here, that financial interest is "not sufficient to set aside the finality requirement imposed by Congress."  *Richardson-Merrell, Inc.*, 472 U.S. at 436.  In *Richardson-Merrell*, the Supreme Court recognized that erroneous disqualification of a client's counsel—a far greater burden than would occur here—"imposes financial hardship on both the disqualified lawyer and the client." *Id.*  Nevertheless, the court declined to allow an interlocutory appeal to permit review of the disqualification order. *Id.* at 436–40.  At bottom, MFA does not qualify for an interlocutory appeal.[4]

---

[3]    The magistrate judge considered the prejudice to MFA before excluding its in-house counsel from accessing Attorneys' Eyes Only materials, concluding that "[e]ven if reliance on outside counsel and experts causes some financial hardship, the normal burdens of patent litigation are insufficient to outweigh the significant risk of inadvertent disclosure of confidential information in this case."  *Magistrate Decision*, at *6.

[4]    The cases cited by the dissent are inapposite.  They do not say that we have discretion to ignore the requirements of the collateral order doctrine.  First, most concern 28 U.S.C. § 1292(b), which explicitly provides that federal

Where we have found jurisdiction under the collateral order doctrine, we have usually done so to address some harm that cannot be undone on appeal from a final judgment. For example, where a district court denied requests to seal certain information, we applied the collateral order doctrine to permit interlocutory appeal because, among other things, "once the parties' confidential information is made publicly available, it cannot be made secret again." *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1217, 1220 (Fed. Cir. 2013) (considering appeal of order "denying requests to seal various confidential exhibits attached to pretrial and post-trial motions"); *see also DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1368 (Fed. Cir. 2021) (considering interlocutory

---

courts of appeals have discretion to decline to hear certain appeals—unlike § 1295, which governs our jurisdiction here and does not provide discretion. *Blackie v. Barrack*, 524 F.2d 891, 900 (9th Cir. 1975); *A. Olinick & Sons v. Dempster Bros., Inc.*, 365 F.2d 439, 442 (2d Cir. 1966); *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131 (9th Cir. 2022); *In re Convertible Rowing Exerciser Pat. Litig.*, 903 F.2d 822, 822 (Fed. Cir. 1990); *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1272 (11th Cir. 2006). Second, two cases conclude that denials of immunity from suit are immediately appealable—an approach the Supreme Court endorsed because denials of immunity meet the requirements of the collateral order doctrine. *See Bd. of Regents*, 936 F.3d at 1371–72; *Metlin v. Palastra*, 729 F.2d 353, 355 (5th Cir. 1984); *see also Mitchell v. Forsyth*, 472 U.S. 511, 525–27 (1985). Finally, the remaining cases that analyze jurisdiction under the collateral order doctrine required that the doctrine's prerequisites be met before the courts would exercise jurisdiction—exactly as we do here.

appeal of order unsealing amended complaint).  No such dire circumstances exist here.

Notably, this case does not involve whether Alaska's information should be *sealed* or *unsealed*, but rather whether its information could be disclosed to MFA's in-house counsel, which is an entirely different issue.  Moreover, the district court *did not permit disclosure* of Alaska's confidential information to MFA's in-house counsel, instead protecting that information by denying MFA's in-house counsel access.  Because there is no risk Alaska's information will be revealed to an improper recipient, the district court's order does not fall within the "small class" of collateral rulings appropriate for appellate review.

Importantly, parties routinely raise discovery disputes multiple times throughout a lawsuit.  Protective order issues represent only a small subset of the many discovery disputes district courts resolve.  To permit MFA's interlocutory appeal here would encourage parties to "unduly delay the resolution of district court litigation and needlessly burden" this court by seeking appellate review of any pretrial discovery dispute in any patent case.  *See Mohawk*, 558 U.S. at 112.

## III.    CONCLUSION

Accordingly, we dismiss MFA's interlocutory appeal for lack of jurisdiction under the collateral order doctrine.

## DISMISSED

# United States Court of Appeals
# for the Federal Circuit

_____

**MODERN FONT APPLICATIONS LLC,**
*Plaintiff-Appellant*

**v.**

**ALASKA AIRLINES, INC.,**
*Defendant-Appellee*

_____

2021-1838

_____

Appeal from the United States District Court for the District of Utah in No. 2:19-cv-00561-DBB-CMR, Judge David Barlow.

_____

NEWMAN, *Circuit Judge*, dissenting.

The panel majority holds that we do not have jurisdiction to consider this appeal of the district court's evidentiary ruling. However, our authority to review this ruling is not a matter of appellate jurisdiction, but of appellate discretion. A court's jurisdiction is established by statute, and the question concerning this particular protective order is within our jurisdiction and subject to our discretion to review and resolve.

I believe that in the circumstances hereof it is preferable to exercise this discretion and decide the question

concerning this protective order. Nonetheless, the panel majority holds that we do not have jurisdiction, and relegates our decision of this aspect until after final judgment—thus creating inefficiency and possible injustice. I respectfully dissent.

## DISCUSSION

### I

### *We have jurisdiction to review this protective order at this stage of trial proceedings*

Jurisdiction is a rigorous concept, for it establishes "a tribunal's power to hear a case, a matter that can never be forfeited or waived." *Union Pac. R.R. Co. v. Brotherhood of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81 (2009) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)). The Supreme Court explained:

> Recognizing that the word "jurisdiction" has been used by courts, including this Court, to convey "many, too many, meanings," *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 90 (1998), we have cautioned, in recent decisions, against profligate use of the term. Not all mandatory "prescriptions, however emphatic, are . . . properly typed jurisdictional," we explained in *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510.

*Id.* (citations omitted). The Court has discussed the difference between subject matter jurisdiction and a claim-processing matter, *see Kontrick v. Ryan*, 540 U.S. 443, 456 (2004), and the distinction between a court's jurisdiction founded on legislative action, and a court's discretion to act on matters within its jurisdiction. *See Bowles v. Russell*, 551 U.S. 205, 211–12 (2007) ("This Court's treatment of its certiorari jurisdiction also demonstrates the jurisdictional distinction between court-promulgated rules and limits enacted by Congress.").

Appellate courts have jurisdiction to resolve issues that arise in cases within their appellate assignment.  Appellate review is a matter of appellate discretion, as illustrated in *Metlin v. Palastra*, 729 F.2d 353, 355 (5th Cir. 1984) ("Our jurisdiction can, in the interest of judicial economy, extend as a matter of discretion to review of the closely related denial of qualified immunity.").  *See also, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 900 (9th Cir. 1975) ("Because the record is hazy, because we have granted the extensions, and because the issues have now been briefed and argued and are ripe for decision, we think the preferable course is for us to decide the appeal and provide guidance to the trial court."). In *A. Olinick & Sons v. Dempster Bros., Inc.*, 365 F.2d 439 (2d Cir. 1966) the appellate court discussed its discretion to accept or reject a certified question and applicability of the writ of mandamus, and stated that "the Court of Appeals has total discretion—akin to that exercised by the Supreme Court on petitions for certiorari—in deciding whether or not to permit review."  *Id.* at 442.

Protective orders concerning confidentiality and discovery have been reviewed, applying the standard of abuse of discretion.  The court in *SEC v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) stated that "ordinarily requests to modify [a protective order] are directed to the district court's discretion and subject to review only for abuse of discretion," quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2044.1 at 575–76 (2d ed. 1994), and stating: "We conclude that we have jurisdiction to address the merits of the challenged order of the district court."  *Id.* at 1270.

Other circuits have acted similarly.  *E.g.*, *SEC v. TheStreet.Com*, 273 F.3d 222, 228 (2d Cir. 2001) (concluding that the appellate court has jurisdiction to review modification of a protective order); *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1272 (11th Cir. 2006) ("Under § 1292(b), appellate review, even for certified questions, is discretionary . . . .  By extension, review by

appellate courts of noncertified questions is also discretionary.").

We discussed this discretion in *In re Convertible Rowing Exerciser Patent Litig.*, 903 F.2d 822 (Fed. Cir. 1990):

> The granting of the appeal is also discretionary with the court of appeals which may refuse to entertain such an appeal in much the same manner that the Supreme Court today refuses to entertain applications for writs of certiorari.

*Id.* at 822. We explained that appellate review of an interlocutory order is a matter of discretion:

> It should be made clear that if application for an appeal from an interlocutory order is filed with the court of appeals, the court of appeals may deny such application without specifying the grounds upon which such a denial is based. It could be based upon a view that the question involved was not a controlling issue. It could be denied on the basis that the docket of the circuit court of appeals was such that the appeal could not be entertained for too long a period of time. But, whatever the reason, the ultimate determination concerning the right of appeal is within the discretion of the appropriate circuit court of appeals.

*Id.* (citing S. Rep. No. 2434 (1958), 85th Cong., 2d Sess. 3, 4, *reprinted in* 1958 U.S.C.C.A.N. 5255).

We have applied these principles to discovery matters. In *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1377 (Fed. Cir. 2010), we recited that "[f]inal decisions concerning discovery matters are reviewed by this court under the abuse of discretion standard." *See also Baystate Technologies, Inc. v. Bowers*, 283 F. App'x 808 (Fed. Cir. 2008) (per curiam) (reviewing denial of a motion to modify a protective order, applying the standard of abuse of discretion).

### *The collateral order doctrine is a guide to discretion, not a rule of jurisdiction*

The collateral order doctrine, on which the panel majority relies, recites factors relevant to discretionary review of aspects within the court's jurisdiction. *See Kell v. Benzon*, 925 F.3d 448, 453 (10th Cir. 2019) ("[T]he collateral-order doctrine would ordinarily apply only if an appellate court would probably not need to consider the merits a second time.").

Applying this guidance, in *Board of Regents of the University of Texas System v. Boston Scientific Corp.*, 936 F.3d 1365 (Fed. Cir. 2019), we held that a transfer order was immediately appealable, rather than requiring the appellant to wait for final judgment. *Id.* at 1370. In *Apple Inc. v. Samsung Electronics Co.*, 727 F.3d 1214 (Fed. Cir. 2013), we exercised our discretion and accepted immediate appeal concerning the unsealing of certain discovery documents, reasoning that the harm of erroneous unsealing could not be undone if appeal were delayed. *Id.* at 1220.

The Supreme Court has explained that "[t]he collateral order doctrine is best understood not as an exception to the 'final decision' rule laid down by Congress in § 1291, but as a 'practical construction' of it." *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 41–42 (1995) (quoting *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)); *id.* ("tentative, informal, or incomplete" rulings are not immediately appealable)) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

Imprecise usage of "jurisdiction" is not a new phenomenon, as the Court acknowledged in *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008) ("As convenient shorthand, the Court has sometimes referred to the time limits in such statutes as 'jurisdictional.'"). My colleagues appear to have adopted this convenient shorthand, for their holding that we do not have jurisdiction over this appeal is otherwise unsupported.

## II

### *The Utah district court's Standard Protective Order*

This appeal concerns designations by Alaska Airlines under the Standard Protective Order of the District of Utah, which authorizes parties to designate discovery items as "Attorneys Eyes Only" for the exclusion of in-house attorneys.[1]  Alaska also seeks to preserve the confidentiality of its source code.

The Standard Protective Order states the right of a party to challenge a confidentiality designation at any time:

9.  Challenge to Designation

(a) Any receiving party may challenge a producing party's designation at any time.  A failure of any party to expressly challenge a claim of confidentiality or any document designation shall not constitute a waiver of the right to assert at any subsequent time that the same is not in fact confidential or not an appropriate designation for any reason.

(b) Any receiving party may disagree with the designation of…ATTORNEYS EYES ONLY…stating with particularity the reasons for the request… . The producing party shall…explain the reason for the particular designation and to state its intent to seek a protective order… .

(c) …The burden of proving that the designation is proper shall be upon the producing party. . . .

---

[1]  Available at: https://www.utd.uscourts.gov/sites/utd /files/Standard_Protective_Order.pdf.

The Utah local rules provide for appeal of Protective Order designations:

> Rule 26-2(a)(2).  Any party or person who believes that substantive rights are being impacted by application of the [Standard Protective Order] rule may immediately seek relief. . . .

Applying this rule, Modern Font Applications (MFA) challenges Alaska's "Attorneys Eyes Only" designations, MFA stating that it will be "irreparably prejudiced" in this litigation if its in-house counsel is denied access to Alaska's confidential information.  MFA draws analogy to the situation in *Osband v. Woodford*, 290 F.3d 1036 (9th Cir. 2002), where the court held that it has jurisdiction to hear the appeal concerning a habeas petition, reasoning that "having never discussed the discovered materials with the 'prosecutorial personnel' who prosecuted Osband, the State may never know how it could have done a better job in defending against the habeas petition . . . .  It therefore could never show prejudice [and] even if the State could show prejudice, it is unlikely that this could serve as a ground for reversal of a grant of habeas." *Id.* at 1041.

The district court rejected MFA's challenge and sustained Alaska's confidentiality and "Attorneys Eyes Only" designations.[2]  The court found that the balance of harms weighs against disclosure to MFA's in-house counsel of Alaska's confidential business and technological information.  The court explained that: "This is not a case where in-house counsel engages in only limited licensing activities as in *Live Eyewear*, but rather, [MFA]'s entire business

---

[2]    *Modern Font Applications LLC v., Alaska Airlines, Inc.*, Case No. 2:19-cv-00561-DBB-CMR, 2021 WL 364189 (D. Utah Feb. 3, 2021); 2021 WL 3729382 (D. Utah Mar. 2, 2021) ("Dist. Ct. Order.").

model revolves around the licensing of patents through litigation with the assistance of its in-house counsel[.]" Dist. Ct. Order at *5.

With respect to MFA's access to Alaska's source code, the district court observed that the source code "contains both sensitive and valuable information," *id.* at *4, and held that MFA had not adequately explained why it needs Alaska's source code.  It is well-recognized that source code may be a company's "crown jewels," *Unwired Planet LLC v. Apple, Inc.*, 2013 WL 1501489, at *5 (D. Nev. Apr. 11, 2013), and "its secrecy is of enormous commercial value," *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 259 (S.D.N.Y. 2008).  In *Deutsche Bank* we stated:

> A determination of the risk of inadvertent disclosure or competitive use does not end the inquiry. Even if a district court is satisfied that such a risk exists, the district court must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice. *U.S. Steel,* 730 F.2d at 1468; *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). In balancing these conflicting interests the district court has broad discretion to decide what degree of protection is required. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984); *Brown Bag Software,* 960 F.2d at 1470.

605 F.3d at 1380.  These principles, as applied by the district court, are appropriate for our review.

The panel majority states its concern that "[permitting] MFA's interlocutory appeal here would encourage parties to 'unduly delay the resolution of district court litigation and needlessly burden' this court by seeking appellate review of any pretrial discovery dispute in any patent case." Maj. Op. at 10 (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 112 (2009)).  This policy concern is not a

criterion of appellate jurisdiction, but of appellate discretion as applied to an appeal of which we have subject matter jurisdiction.

The panel majority, while denying this court's appellate jurisdiction, discusses the merits of MFA's argument but nonetheless declines to make a final decision, citing MFA's ability to request "review[] after final judgment." Maj. Op. at 7.  In my view, the preferable path at this stage of this case is to exercise our discretion and finally resolve these confidentiality and protective order issues, for if MFA's in-house counsel is indeed entitled to receive this information, the information should be available before, not after, trial.

From the ruling that we do not have jurisdiction, I respectfully dissent.